**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| |
|---|
| IN RE ORDER REQUIRING APPLE, INC. TO ASSIST IN THE EXECUTION OF A SEARCH WARRANT ISSUED BY THIS COURT. |

No. 1:15-mc-01902-JO

**BRIEF OF *AMICI CURIAE***
**AMERICAN CIVIL LIBERTIES UNION, NEW YORK CIVIL LIBERTIES UNION,**
**ELECTRONIC FRONTIER FOUNDATION, AND JENNIFER GRANICK AND RIANA**
**PFEFFERKORN**

Arthur Eisenberg
Mariko Hirose
New York Civil Liberties Union
125 Broad Street, 19th Floor
New York, NY 10004
Tel: 212-607-3300
aeisenberg@nyclu.org

Esha Bhandari
Alex Abdo
American Civil Liberties Union
 Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: 212-549-2500
ebhandari@aclu.org

Jennifer Stisa Granick (CA Bar #168423)
Director of Civil Liberties*
Riana Pfefferkorn (CA Bar #266817)
Cryptography Policy Fellow*
Stanford Law School
Center for Internet and Society
559 Nathan Abbott Way
Stanford, CA 94305
Tel: 650-736-8675
jennifer@law.stanford.edu
* For affiliation purposes only

Andrew Crocker
Nathan D. Cardozo
Electronic Frontier
 Foundation
815 Eddy Street
San Francisco, CA 94109
Tel: 415-436-9333
andrew@eff.org

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ii

SUMMARY OF ARGUMENT ...........................................................................................2

BACKGROUND ................................................................................................................3

ARGUMENT ....................................................................................................................3

    I.    The All Writs Act does not authorize the order the government seeks. ...............................3

        A.    The order the government seeks exceeds the bounds of the All Writs Act, because the authority to force a third party to decrypt a device does not stem from the court's authority to issue a warrant. ..................................................................................................4

        B.    The All Writs Act does not confer authority that Congress has consciously withheld. ....6

    II.    It would be unconstitutional to conscript Apple into governmental service to assist in gaining access to information that Apple does not possess or control. .........................................10

    CONCLUSION .................................................................................................................18

## TABLE OF AUTHORITIES

**Cases**

*Application of the U.S.*, 427 F.2d 639 (9th Cir. 1970) .................................................................. 9

*Application of U.S. for an Order Authorizing an In-Progress Trace of Wire Commc'ns over Tel. Facilities*, 616 F.2d 1122 (9th Cir. 1980) .......................................... 12, 15

*Ass'n for Retarded Citizens of Conn., Inc. v. Thorne*, 30 F.3d 367, 370 (2d Cir. 1994) .................................................................................................................................. 5

*Bernstein v. United States*, 192 F.3d 1308 (9th Cir. 1999) ............................................................ 1

*Clark v. Martinez*, 543 U.S. 371 (2005) ........................................................................................ 11

*Glosband v. Watts Detective Agency, Inc.*, 21 B.R. 963 (D. Mass. 1981) .................................... 12

*In re Application of the U.S. for an Order Authorizing Disclosure of Location Information of a Specified Wireless Tel.*, 849 F. Supp. 2d 526 (D. Md. 2011) ........................ 9

*In re Application of the United States for an Order Authorizing the Use of a Pen Register*, 396 F. Supp. 2d 294 (E.D.N.Y. 2005) .......................................................................... 4

*In re Application of U.S. for an Order Directing a Provider of Commc'n Servs. to Provide Technical Assistance to Agents of the U.S. Drug Enforcement Admin.*, No. 15-1242 M, 2015 WL 5233551 (D.P.R. Aug. 27, 2015) .................................................. 16

*In re Application of U.S. for an Order Directing X to Provide Access to Videotapes*, No. 03-89, 2003 WL 22053105 (D. Md. Aug. 22, 2003) .................................... 16

*In re Order Requiring Apple, Inc. to Assist in the Execution of a Search Warrant Issued by this Court*, CR 14-90470 (N.D. Cal. June 6, 2014) ................................................. 14

*In re Order Requiring Apple, Inc. to Assist in the Execution of a Search Warrant Issued by this Court*, CR 14-90812 (N.D. Cal. Nov. 3, 2014) ................................................. 14

*In re Order Requiring Apple, Inc. to Assist in the Execution of a Search Warrant Issued by this Court*, No. 1:15-mc-01902-JO, 2015 WL 5920207 (E.D.N.Y. Oct. 9, 2015) ............................................................................................................ 3, 4, 6, 7

*In re XXX, Inc.*, No. 14 Mag. 2258, 2014 WL 5510865 (S.D.N.Y. Oct. 31, 2014) ..................... 14

*ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351 (5th Cir. 1978) .................................................. 5

*Newark Morning Ledger Co. v. United States*, 507 U.S. 546 (1993) ........................................... 12

*Application of U. S. for Order Authorizing Installation of Pen Register or Touch-Tone Decoder & Terminating Trap*, 610 F.2d 1148 (3d Cir. 1979) .................................. 11, 15

*Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34 (1985) .................................. 4

*Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310 (9th Cir. 1989) ........................... 12

*The Company v. United States*, 349 F.3d 1132 (9th Cir. 2003) ............................ 16, 17

*United States v. Doe*, 537 F. Supp. 838 (E.D.N.Y. 1982) ............................................ 15

*United States v. Hall*, 583 F. Supp. 717 (E.D. Va. 1984) ............................................ 15

*United States v. New York Tel. Co.*, 434 U.S. 159 (1977) .................................... passim

**Statutes and Rules**

18 U.S.C. § 2511 ........................................................................................................... 9

18 U.S.C. § 2518 ...................................................................................................... 9, 16

18 U.S.C. § 2520 ........................................................................................................... 9

28 U.S.C. § 1651 ....................................................................................................... 3, 4

47 U.S.C. § 1001 ........................................................................................................... 7

47 U.S.C. § 1002 ........................................................................................................... 7

Fed. R. Crim. P. 41 ....................................................................................................... 4

**Other Authorities**

Andrea Peterson, *Congressman with Computer Science Degree: Encryption Back-doors Are "Technologically Stupid,"* Wash. Post (Apr. 30, 2015), https://www.washingtonpost.com/news/the-switch/wp/2015/04/30/congressman-with-computer-science-degree-encryption-back-doors-are-technologically-stupid .................................................................... 8

Charlie Savage, *U.S. Tries to Make it Easier to Wiretap the Internet*, N.Y. Times (Sept. 27, 2010), http://www.nytimes.com/2010/09/27/us/27wiretap.html ............................... 7

Charlie Savage, *U.S. Weighs Wide Overhaul of Wiretap Laws*, N.Y. Times (May 7, 2013), http://www.nytimes.com/2013/05/08/us/politics/obama-may-back-fbi-plan-to-wiretap-web-users.html ........................................................................ 7

Electronic Frontier Foundation, *Who Has Your Back,* https://www.eff.org/who-has-your-back-government-data-requests-2015 (last visited Oct. 19, 2015) ........................... 13

Ellen Nakashima & Barton Gellman, *As Encryption Spreads, U.S. Grapples with Clash Between Privacy, Security*, Wash. Post (Apr. 10, 2015), https://www.washingtonpost.com/world/national-security/as-encryption-spreads-us-worries-about-access-to-data-for-investigations/2015/04/10/7c1c7518-d401-11e4-a62f-ee745911a4ff_story.html .................... 6

Ellen Nakashima, *WhatsApp, Most Popular Instant-Messaging Platform, to Encrypt Data for Millions*, Wash. Post (Nov. 18, 2014), https://www.washingtonpost.com/world/national-security/whatsapp-worlds-most-popular-instant-messaging-platform-to-encrypt-data-for-millions/2014/11/18/b8475b2e-6ee0-11e4-ad12-3734c461eab6_story.html ........................... 8

Letter from Yahoo! Inc. to U.S. Marshals Service (Sept. 15 2009), http://www.wired.com/images_blogs/threatlevel/2009/12/yahoo-price-list-letter.pdf ................................................................................................................. 13

Matt Apuzzo et al., *Apple and Other Tech Companies Tangle with U.S. Over Data Access*, N.Y. Times (Sept. 7, 2015), http://www.nytimes.com/2015/09/08/us/politics/apple-and-other-tech-companies-tangle-with-us-over-access-to-data.html. ................................................................. 6

Matthew Panzarino, *Apple's Tim Cook Delivers Blistering Speech on Encryption, Privacy*, TechCrunch (June 2, 2015), http://techcrunch.com/2015/06/02/apples-tim-cook-delivers-blistering-speech-on-encryption-privacy .................................................. 13

Mike McConnell, Michael Chertoff & William Lynn, Opinion, *Why the Fear Over Ubiquitous Data Encryption Is Overblown*, Wash. Post (July 28, 2015), https://www.washingtonpost.com/opinions/the-need-for-ubiquitous-data-encryption/2015/07/28/3d145952-324e-11e5-8353-1215475949f4_story.html ...................... 8

Nicole Perlroth & David E. Sanger, *Obama Won't Seek Access to Encrypted User Data*, N.Y. Times (Oct. 10, 2015), http://www.nytimes.com/2015/10/11/us/politics/obama-wont-seek-access-to-encrypted-user-data.html. ................................................................................ 7

**INTERESTS OF *AMICI CURIAE***

The American Civil Liberties Union ("ACLU") is a nationwide, nonprofit, nonpartisan organization with approximately 500,000 members dedicated to the principles of liberty and equality embodied in the Constitution and this nation's civil rights laws. Since its founding in 1920, the ACLU has frequently appeared before the Supreme Court and other federal courts, both as direct counsel and as *amicus curiae*, in numerous cases implicating Americans' right to privacy. The ACLU and its members have long been concerned about the impact of new technologies on constitutional rights. The ACLU is particularly concerned with protecting the lawful use of strong encryption technologies, which are essential to preserving the constitutional guarantees of privacy, free expression, and anonymity in the digital age. The New York Civil Liberties Union is the New York State affiliate of the ACLU.

The Electronic Frontier Foundation ("EFF") is a member-supported nonprofit organization devoted to protecting civil liberties and free expression in technology, law, policy, and standards. With over 22,000 dues-paying members, EFF is a leading voice in the global and national effort to ensure that fundamental liberties are respected in the digital environment. EFF has campaigned both in the United States and abroad against ill-considered efforts to block, filter, or degrade access to the public Internet. EFF develops and promotes tools that help consumers and public interest groups test their broadband connections to see if their providers are interfering with the traffic to and from users' computers. EFF has been involved in promoting sound policy in the realm of cryptography and the law since the 1990s when it represented Daniel J. Bernstein in his successful challenge to the inclusion of encryption software on the United States Munitions List. *See Bernstein v. United States*, 192 F.3d 1308 (9th Cir. 1999).

Jennifer Granick and Riana Pfefferkorn, joining as *amici* in their individual capacities, are the Director of Civil Liberties and the Cryptography Policy Fellow with the Stanford Center

1

for Internet and Society, respectively. The Center for Internet and Society ("CIS") is a public interest technology law and policy program at Stanford Law School and a part of Law, Science and Technology Program at Stanford Law School. CIS brings together scholars, academics, legislators, students, programmers, security researchers, and scientists to study the interaction of new technologies and the law and to examine how the synergy between the two can either promote or harm public goods like free speech, innovation, privacy, public commons, diversity, and scientific inquiry.

**SUMMARY OF ARGUMENT**

The government has invoked the All Writs Act to compel Apple, Inc. to unlock and make available personal data stored on a private Apple-manufactured mobile device seized by the government. This is an extraordinary and unjustified attempt to compel a third party not accused of wrongdoing to assist the government in obtaining information that the third party neither possesses nor controls. Private parties may not be conscripted into governmental service where the party is simply the manufacturer of a device the government has seized, and where the government's request goes beyond asking the party to turn over information within its possession, or to intercept communications passing through a medium it controls.

Regardless of whether Apple has the technical ability to provide the assistance requested here, compelling Apple to do so would be unlawful. It is not authorized by the All Writs Act because, as this Court previously noted, Congress has consciously withheld authority for the type of compelled assistance required here. And it would violate the Constitution, because the Fifth Amendment's protection of liberty and property safeguards individuals against conscription into governmental service where they do not, at the very least, possess or control the information the government seeks. For these reasons, this Court should deny the government's request.

2

## BACKGROUND

In a sealed application filed on October 8, 2015, the government asked this Court to issue an order pursuant to the All Writs Act, 28 U.S.C. § 1651, compelling Apple to "disabl[e] the security of an Apple device that the government has lawfully seized pursuant to a warrant." Memorandum and Order, *In re Order Requiring Apple, Inc. to Assist in the Execution of a Search Warrant Issued by this Court*, No. 1:15-mc-01902-JO, 2015 WL 5920207, at *1 (E.D.N.Y. Oct. 9, 2015) (hereinafter Order). The following day, this Court issued an order that deferred ruling on the application and directed Apple to submit its views as to whether the government's request is "technically feasible" and whether compliance would be "unduly burdensome." *Id*.

Apple does not appear to possess the device or to possess the personal data that is stored on the device. *See* Order at *1, *7. Rather, the device appears to be a private mobile device that was manufactured and sold by Apple. The information the government seeks is apparently the owner's personal data, which is stored on that device. Access to the device is apparently protected using a personal identification number or passcode selected by the owner.

## ARGUMENT

### I.    The All Writs Act does not authorize the order the government seeks.

The All Writs Act does not authorize an order allowing the government to compel Apple to unlock, and potentially to decrypt data stored on, private devices seized by the government. This is so for at least two independent reasons. First, an order forcing a third party to decrypt a device does not stem from the court's authority to issue a warrant. Second, even if the government's lack of authority to compel unlocking or decryption is a gap that could be filled by the All Writs Act, Congress has consciously withheld that authority, and it would therefore be inappropriate to supply it through the All Writs Act.

A.     **The order the government seeks exceeds the bounds of the All Writs Act, because the authority to force a third party to decrypt a device does not stem from the court's authority to issue a warrant.**

The All Writs Act, 28 U.S.C. § 1651, allows a court to issue an order to effectuate a prior order authorized by a statute or other source of authority. *See United States v. New York Tel. Co.*, 434 U.S. 159, 172 (1977) ("This Court has repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of *orders it has previously issued* in its exercise of jurisdiction otherwise obtained" (emphasis added)); *Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 42 n.7 (1985) (courts may resort to the All Writs Act "to fill statutory interstices."). As this Court has noted, the All Writs Act is not "a mechanism for the judiciary to give [the government] the investigative tools that Congress has not." *In re Application of the United States for an Order Authorizing the Use of a Pen Register*, 396 F. Supp. 2d 294, 325 (E.D.N.Y. 2005).

The assistance the government seeks here exceeds the bounds of the All Writs Act, because the authority to force a third party to decrypt a device does not stem from the court's authority to issue a warrant. The original order in this case appears to have been a traditional search warrant issued under Federal Rule of Criminal Procedure 41. *See* Order at *1. Such a warrant authorizes law enforcement to search or seize a particular person or property. Fed. R. Crim. P. 41(e). It does not, however, entitle the government to, in seizing property, obtain it in a particular form. In other words, a traditional search warrant allows the government to seize property *as is*, and that authority may not be enlarged through an All Writs Act order compelling a third party to take possession of the property and transform it. For example, if the government had a valid warrant to seize a journal written in a rare foreign language, the All Writs Act could not be used to compel a specialist to translate the journal into English. That authority might make

4

the information seized more useful, but it is qualitatively different than the underlying authority conferred by the search warrant, and therefore not an appropriate use of the All Writs Act.[1]

In *New York Telephone*, the Supreme Court held that the underlying order requiring installation of a pen register was properly authorized as a "seizure" within the meaning of Rule 41, in the light of Congressional intent to allow the use of pen registers. *See* 434 U.S. at 169–70. Thus, the authority to compel the assistance of the telephone company was implicit in, and necessary to implement, the very seizure authorized by the Rule. *See id.* at 172.

But this case is different. The government's warrant presumably authorized it to seize an individual's private mobile device containing personal information, at least some of which has been scrambled using encryption features designed by Apple and turned on, by default, in its "iOS" mobile operating system. Now that the government has seized the device, the warrant's authority has been exhausted. That the information on the device may still be locked or scrambled does not entitle the government to rely on the warrant authority as a basis for an order under the All Writs Act to compel a third party to transform or provide more useful access to the information seized.[2]

_____

[1] In *ITT Community Development Corp. v. Barton*, 569 F.2d 1351 (5th Cir. 1978), the court held that the All Writs Act could not be used to issue a pretrial garnishment order based solely on the district court's subject matter jurisdiction over a diversity action, because even though doing so would ensure sufficient funds to enforce any eventual judgment, it was not necessary to the court's jurisdiction to bring the matter to judgment. *See id.* at 1360 (noting "'(t)he fact that a party may be better able to effectuate its rights or duties if a writ is issued never has been, and under the language of the statute cannot be, a sufficient basis for issuance of the writ'" (quoting *New York Tel. Co.*, 434 U.S. at 189 (Stevens, J., dissenting))). The AWA may be used, of course, to issue remedial orders to effectuate properly authorized judgments or jurisdiction. *See, e.g.*, *Ass'n for Retarded Citizens of Conn., Inc. v. Thorne*, 30 F.3d 367, 370 (2d Cir. 1994) ("Where the district court exercises its jurisdiction to rule on the merits of a litigation, it determines that the law requires a certain outcome and is empowered to issue remedial orders to effectuate that outcome.").

[2] It remains unclear whether there are other ways for the government to get the information it seeks, including through backup copies of the data stored on Apple's servers.

**B.      The All Writs Act does not confer authority that Congress has consciously withheld.**

As this Court has noted, the All Writs Act cannot be used to substitute for "authority that Congress chose not to confer." Order at *2. This is especially true where, as here, the order would impose unprecedented obligations on the third-party recipient of the order and would violate that party's constitutional rights. *See infra* Part II. In this case, Congress has quite consciously refused to authorize law enforcement to force manufacturers of mobile devices to unlock, and decrypt the data on, those devices. While the government has long had the authority to seize and search documents and tangible objects with a warrant, Congress has never granted law enforcement the authority to force third parties to unlock others' secure devices or aid in the decryption of data stored on them. And, as demonstrated during recent legislative debates, Congress has made it clear that the decision not to grant that authority was a conscious one.

The last few years have seen robust legislative debates about whether technology companies such as Apple should be required to build "backdoors" into the encryption features now commonly included in computers, mobile devices, and communications software. These "backdoors" would enable law enforcement to access data that might otherwise, in some circumstances, be inaccessible. The debate has included law enforcement, federal agencies, technology experts within the government, and the White House, but has not resulted in congressional action mandating such access.[3] In fact, on the basis of security concerns related to

---

[3] *See* Ellen Nakashima & Barton Gellman, *As Encryption Spreads, U.S. Grapples with Clash Between Privacy, Security*, Wash. Post (Apr. 10, 2015), https://www.washingtonpost.com/world/national-security/as-encryption-spreads-us-worries-about-access-to-data-for-investigations/2015/04/10/7c1c7518-d401-11e4-a62f-ee745911a4ff_story.html; Matt Apuzzo et al., *Apple and Other Tech Companies Tangle with U.S. Over Data Access*, N.Y. Times (Sept. 7, 2015), http://www.nytimes.com/2015/09/08/us/politics/apple-and-other-tech-companies-tangle-with-us-over-access-to-data.html.

enabling such access, the Obama administration reportedly shelved its effort to seek legislation mandating the creation of technological "backdoors" in the encryption used by companies like Apple.[4] Congress has thus far refused, in other words, to give law enforcement what it has asked for: the ability to override the wishes of companies *unwilling* to actively bypass the security built into their products—whether they have the technical capability to do so or not.

In a closely related context, Congress has even more explicitly withheld authority similar to what the government seeks here. The Communications Assistance for Law Enforcement Act ("CALEA"), passed in 1994, requires "telecommunications carriers" to ensure their equipment, facilities, and services are capable of intercepting individuals' communications in real time. Significantly, when Congress enacted CALEA, it exempted "information services," which includes certain services that Apple provides, from that requirement. *See* 47 U.S.C. §§ 1002(b)(2), 1001(6)(B)(iii); *see* Order at *5. In other words, CALEA exempts companies like Apple from the requirement that they build interception features into their communications services and products.

In recent sessions of Congress, the Federal Bureau of Investigation ("FBI") has vigorously sought to expand CALEA's reach to cover companies like Apple,[5] in large part because of the widespread migration by consumers from easy-to-intercept telephone calls and text messages to Internet-based communications services that use encryption by default, such as

---

[4] Nicole Perlroth & David E. Sanger, *Obama Won't Seek Access to Encrypted User Data*, N.Y. Times (Oct. 10, 2015), http://www.nytimes.com/2015/10/11/us/politics/obama-wont-seek-access-to-encrypted-user-data.html.

[5] *See* Charlie Savage, *U.S. Tries to Make it Easier to Wiretap the Internet*, N.Y. Times (Sept. 27, 2010), http://www.nytimes.com/2010/09/27/us/27wiretap.html; Charlie Savage, *U.S. Weighs Wide Overhaul of Wiretap Laws*, N.Y. Times (May 7, 2013), http://www.nytimes.com/2013/05/08/us/politics/obama-may-back-fbi-plan-to-wiretap-web-users.html.

Apple's iMessage and Facebook's WhatsApp services.[6] But the FBI's proposals have met stiff resistance from Congress, technology experts, and a number of former national security officials. *See* Andrea Peterson, *Congressman with Computer Science Degree: Encryption Back-doors Are "Technologically Stupid,"* Wash. Post (Apr. 30, 2015), https://www.washingtonpost.com/news/the-switch/wp/2015/04/30/congressman-with-computer-science-degree-encryption-back-doors-are-technologically-stupid/ (quoting both Republican and Democratic members of the Information Technology Subcommittee of the House Oversight Committee, several of whom have computer science degrees, criticizing the FBI's requests for expanded surveillance authorities); Mike McConnell, Michael Chertoff & William Lynn, Opinion, *Why the Fear Over Ubiquitous Data Encryption Is Overblown*, Wash. Post (July 28, 2015), https://www.washingtonpost.com/opinions/the-need-for-ubiquitous-data-encryption/2015/07/28/3d145952-324e-11e5-8353-1215475949f4_story.html (an op-ed by several former national security officials arguing that "the greater public good is a secure communications infrastructure protected by ubiquitous encryption at the device, server and enterprise level" and that "[i]f law enforcement and intelligence organizations face a future without assured access to encrypted communications, they will develop technologies and techniques to meet their legitimate mission goals.").

In short, Congress has had ample opportunity, in multiple contexts, to compel companies such as Apple to build surveillance mechanisms into their products and services to facilitate government access, but it has declined to do so. It has refused, during the debate of the last

---

[6] *See* Ellen Nakashima, *WhatsApp, Most Popular Instant-Messaging Platform, to Encrypt Data for Millions*, Wash. Post (Nov. 18, 2014), https://www.washingtonpost.com/world/national-security/whatsapp-worlds-most-popular-instant-messaging-platform-to-encrypt-data-for-millions/2014/11/18/b8475b2e-6ee0-11e4-ad12-3734c461eab6_story.html.

8

several months, to compel companies like Apple to build backdoors into the encryption used to protect data *stored* on mobile devices. And, both when it passed CALEA in 1994, and in the recent debate regarding the expansion of CALEA sought by the FBI, it has refused to require companies like Apple to build surveillance mechanisms necessary to enable the government to *intercept* otherwise encrypted digital communications.

This case, thus, stands in stark contrast to *New York Telephone*, in which the Supreme Court observed that Congress had intended to allow the use of pen registers. The Supreme Court, in part on that basis, decided that a telephone company could be compelled to assist with the installation of a pen register. *See New York Tel. Co.*, 434 U.S. at 176 ("Congress clearly intended to permit the use of pen registers by federal law enforcement officials."); *id.* at 170 (noting that where Congress had already permitted "the recording of conversations by means of electronic surveillance" it would be "anomalous" to find that Congress intended to prohibit "the far lesser intrusion accomplished by pen registers."); *see also In re Application of the U.S. for an Order Authorizing Disclosure of Location Information of a Specified Wireless Tel.*, 849 F. Supp. 2d 526, 579 (D. Md. 2011) ("[T]he All Writs Act enables the Court to, in the absence of other enabling authority, issue supplemental orders to effectuate valid orders or warrants issued under existing law, but only to the extent any supplemental order issued does not constitute an additional invasion of privacy. Notably, and critically different than this matter, *the Supreme Court acknowledged and deferred to congressional approval of a pen register as a permissible law enforcement tool*." (emphasis added)).[7]

---

[7] *See also Application of the U.S.*, 427 F.2d 639, 644 (9th Cir. 1970), *superseded by statute* (holding that because there was no statutory authorization, a federal district court could not compel a telephone company to provide technical cooperation in intercepting a wire communication) (later superseded by amendments to Title III, 18 U.S.C. §§ 2511, 2518 & 2520, providing express authority for assistance in certain circumstances).

For these reasons, the All Writs Act may not be used to compel Apple to unlock or decrypt its customers' devices. That Apple may have created for its own use tools that can extract at least some private data from some devices is irrelevant to whether *Congress* intended to grant law enforcement agencies the authority to demand the creation or use of such tools and capabilities by third parties. Congressional intent is the critical factor in determining whether the All Writs Act can be used to issue the order here. Because Congress consciously withheld that authority, the All Writs Act cannot be used to confer it.

**II.    It would be unconstitutional to conscript Apple into governmental service to assist in gaining access to information that Apple does not possess or control.**

Even if the All Writs Act could be stretched to permit it, the compelled assistance the government seeks from Apple is unconstitutional. Third parties cannot be commissioned to work for law enforcement except in narrow contexts, which do not include simply being the manufacturer of a device containing stored personal information which the third party does not possess or control. The government seeks to compel a third party not accused of wrongdoing to create information—derived from information that the party does not possess or control—and to provide that information to law enforcement. Compelling a device's manufacturer to unlock or decrypt the private data stored on the device is akin to compelling a lock manufacturer to break into the houses of its customers for the government. This type of assistance to law enforcement is qualitatively different from cases where *the very information* the government seeks is within the third party's possession or control.

The government's request in this case implicates fundamental liberty and property interests, and thus raises novel and grave constitutional questions regarding the limits on the

assistance the government can compel from private actors.[8] At the very least, those questions trigger this Court's obligation, under the doctrine of constitutional avoidance, to interpret the All Writs Act not to permit the sort of order the government seeks here. *See Clark v. Martinez*, 543 U.S. 371, 380–81 (2005) ("[W]hen deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice. If one of them would raise a multitude of constitutional problems, the other should prevail—whether or not those constitutional problems pertain to the particular litigant before the Court.").

It is already established that governmental conscription of third parties' assistance is of constitutional import. As this Court and others have recognized, an order compelling third-party conduct pursuant to the All Writs Act necessarily implicates the third party's due process rights under the Fifth Amendment. *See* Order at *10; *Application of U. S. for Order Authorizing Installation of Pen Register or Touch-Tone Decoder & Terminating Trap* (*Bell Telephone*), 610 F.2d 1148, 1156 (3d Cir. 1979) ("We have no difficulty finding a deprivation of a property interest here. The tracing orders denied appellants the free use of their equipment and of the services of their employees, interests to which they are entitled as basic property and contract rights.").

Because an order under the All Writs Act burdens fundamental interests in property and liberty, courts have held that a third party recipient of such an order is entitled to a hearing at which to contest it.[9] While that hearing fulfills the procedural protections guaranteed by the Fifth

---

[8] This Court need not decide what precise connection a third party must have to the underlying information the government seeks before it may be compelled to assist. It is enough in this case that Apple does not possess the data stored on the device, and that the information sought by the government here is not traveling through any medium that Apple controls.

[9] *See, e.g.*, *Bell Telephone*, 610 F.2d at 1157 ("We conclude that due process requires a hearing on the issue of burdensomeness before compelling a telephone company to provide tracing assistance."); *Application of U.S. for an Order Authorizing an In-Progress Trace of Wire*

Amendment, courts have also recognized a *substantive* limit on the authority to compel assistance from third parties: the assistance may not be unreasonably burdensome. *See New York Tel. Co*., 434 U.S. at 172 ("[T]he power of federal courts to impose duties upon third parties is not without limits; unreasonable burdens may not be imposed."); *see also Application of U.S. for an Order Authorizing an In-Progress Trace of Wire Commc'ns over Tel. Facilities* (*Mountain Bell*), 616 F.2d 1122, 1132–33 (9th Cir. 1980) (affirming a district court's order compelling Mountain Bell to trace telephone calls by using electronic facilities within the company's exclusive control, on the ground that "the obligations imposed . . . were reasonable ones." (citing *New York Tel. Co*., 434 U.S. at 172)).

Indeed, Apple's Fifth Amendment interests here are particularly acute. Among those interests is the maintenance of business goodwill, *i.e*., the "expectancy of continued patronage," which constitutes a protected property interest. *Newark Morning Ledger Co. v. United States*, 507 U.S. 546, 555 (1993) (internal quotation marks omitted); *see Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1316 (9th Cir. 1989) ("The goodwill of one's business is a property interest entitled to protection; the owner cannot be deprived of it without due process."); *Glosband v. Watts Detective Agency, Inc.*, 21 B.R. 963, 975 (D. Mass. 1981) ("Goodwill is a right of property which the courts will guard as carefully as it would visible, tangible property." (internal quotation marks omitted)). Apple expressly distinguishes itself on the basis of its commitment and ability to protect users' privacy and security. *See, e.g.*, Matthew Panzarino,

---

*Commc'ns over Tel. Facilities*, 616 F.2d 1122, 1132–33 (9th Cir. 1980) (declining to rule on a due process challenge to compelled assistance by a telephone company because it was not raised below but nonetheless ordering that the third party be given "reasonable notice and an opportunity to be heard" given the "important nature of the interests at stake"); *In re XXX, Inc.*, No. 14 Mag. 2258, 2014 WL 5510865, at *2 (S.D.N.Y. Oct. 31, 2014) ("Courts have held that due process requires that a third party subject to an order under the All Writs Act be afforded a hearing on the issue of burdensomeness prior to compelling it to provide assistance to the Government.").

*Apple's Tim Cook Delivers Blistering Speech on Encryption, Privacy*, TechCrunch (June 2, 2015), http://techcrunch.com/2015/06/02/apples-tim-cook-delivers-blistering-speech-on-encryption-privacy. In doing so, it is participating in the new market that U.S. technology companies are now actively competing in, based on the privacy and security features built into their products. *See* Electronic Frontier Foundation*, Who Has Your Back,* https://www.eff.org/who-has-your-back-government-data-requests-2015 (last visited Oct. 19, 2015); Letter from Yahoo! Inc. to U.S. Marshals Service, at 9 (Sept. 15 2009), http://www.wired.com/images_blogs/threatlevel/2009/12/yahoo-price-list-letter.pdf (noting that the release of information about Yahoo! turning over users' data to law enforcement is "reasonably likely to lead to impairment of its reputation for protection of user privacy and security, which is a competitive disadvantage for technology companies."). The assistance the government seeks here would undermine Apple's commitment and ability to protect its users' privacy, exacerbating the property deprivation.

While there is little precedent interpreting the substantive limits on the government's authority to compel assistance in its investigations, *amici* contend that the Fifth Amendment forbids the government from compelling the assistance it seeks here: the assistance of an unwilling third party not accused of wrongdoing to obtain information it does not possess or control. Aside from the government's recent efforts to compel the unlocking of mobile devices, *amici* are not aware of any case in our country's history allowing the government to compel such assistance. That sort of "assistance" is fundamentally inconsistent with the interests protected by the Fifth Amendment, which generally guarantees freedom from governmental interference

13

absent evidence of wrongdoing or possession or control of information to which the government is entitled.[10]

Although prior cases compelling assistance from third parties have not addressed the substantive due-process question raised here, they are all consistent with the view *amici* advance. In those cases, compelled assistance was deemed permissible where it involved third parties that possessed the information the government wanted or that controlled the medium through which the information traveled. In fact, in *New York Telephone*, the Supreme Court specifically considered whether the telephone company in the case "was a third party *so far removed from the underlying controversy* that its assistance could not be permissibly compelled." 434 U.S. at 174 (emphasis added). This language suggests a limit on the *types* of innocent third parties the government can coerce into assisting it, regardless of the material burden imposed on that party. In *New York Telephone*, for example, it was important to the Supreme Court's analysis that the third party's facilities "were being employed to facilitate a criminal enterprise on a continuing basis." *Id.* at 174–75. But in this case, Apple is not connected to the underlying investigation—it simply manufactured and sold the device that stores the data the government wants as part of an investigation unrelated to Apple. Another factor *New York Telephone* emphasized was the telephone company's role as a "highly regulated public utility *with a duty to serve the*

---

[10] *Amici* are aware of one opinion and two orders that have been made public compelling the unlocking of a mobile device. In the published opinion addressing this issue, the court noted that its decision was rendered prior to satisfying the procedural due process requirements implicated by such an order. *See In re XXX, Inc.*, No. 14 Mag. 2258, 2014 WL 5510865, at *2–*3 (S.D.N.Y. Oct. 31, 2014). And, as this Court noted, *In re XXX, Inc.* failed to consider the burden of compliance beyond "the physical demands and immediate monetary costs." Order at *9. The two other orders compelling the unlocking of mobile devices did not address the constitutional concerns raised by such an order. In both cases, the courts declined to compel Apple to attempt to decrypt or enable access to encrypted data. *See In re Order Requiring Apple, Inc. to Assist in the Execution of a Search Warrant Issued by this Court*, CR 14-90812, *2 (N.D. Cal. Nov. 3, 2014); In re Order Requiring Apple, Inc. to Assist in the Execution of a Search Warrant Issued by this Court*, CR 14-90470, *1 (N.D. Cal. June 6, 2014).

14

*public . . . .*" *Id.* at 174 (emphasis added). But in this case, Apple is a private company competing on the very basis of the privacy and security it can offer its customers. Moreover, it is doing so in an environment where the use of encryption to protect data stored on mobile devices has been actively encouraged by legislators and law enforcement officials. *See supra* Part I.B.

Thus, two critical factors distinguish this case from *New York Telephone*: in *New York Telephone*, (1) the recipient of the All Writs Act order possessed or had effective control over the very information the government sought, and (2) the telephone company had no business interest that would be harmed. *See* 434 U.S. at 174–75 ("[I]t can hardly be contended that the Company . . . had a substantial interest in not providing assistance."). The same factors are present in essentially all relevant cases compelling assistance. For example, the Ninth Circuit held that a district court had the power under the All Writs Act to order a telephone company to "perform an *in-progress* trace of telephone calls by means of electronic *facilities within its exclusive control*." *Mountain Bell*, 616 F.2d at 1123 (emphases added). In so holding, the court emphasized the narrowness of its ruling, stating "our decision today should not be read to authorize the wholesale imposition upon private, third parties of duties pursuant to search warrants." *Id.* at 1132; *see also United States v. Doe*, 537 F. Supp. 838, 840 (E.D.N.Y. 1982) (granting an order, pursuant to the All Writs Act, to compel a telephone company to supply a subscriber's toll records within its possession); *Bell Telephone*, 610 F.2d at 1155 (finding that the district court could, pursuant to the All Writs Act, order a telephone company to assist law enforcement agents in the tracing of telephone calls); *United States v. Hall*, 583 F. Supp. 717 (E.D. Va. 1984) (holding the government was entitled to a court order, pursuant to the All Writs Act, compelling a credit card issuer to duplicate and provide credit card records the company already maintained); *In re Application of U.S. for an Order Directing X to Provide Access to*

*Videotapes*, No. 03-89, 2003 WL 22053105, at *3 (D. Md. Aug. 22, 2003) (finding appropriate an order under the All Writs Act that directed an apartment complex "merely to provide access" to the government to videotapes the apartment complex possessed); *In re Application of U.S. for an Order Directing a Provider of Commc'n Servs. to Provide Technical Assistance to Agents of the U.S. Drug Enforcement Admin.,* No. 15-1242 M, 2015 WL 5233551, at *5 (D.P.R. Aug. 27, 2015) (issuing an order under the All Writs Act directing an electronic communication services provider to facilitate the *interception* of electronic communications to and from a mobile phone where the mobile phone customer had consented).

In this case, Apple does not possess the device the government has seized or the private data the government seeks. The government is neither requiring Apple to intercept information that passes through its control, as in the telephone company cases, nor compelling Apple to obtain records that the company maintains.

Furthermore, unlike in previous cases, the order here would fundamentally alter the relationship between Apple and its customers, against its will. The Ninth Circuit considered the impact on a third party's business model when assessing the limits of compelled assistance to law enforcement, even though it did not explicitly consider constitutional limits. In *The Company v. United States*, 349 F.3d 1132 (9th Cir. 2003), the court concluded that Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2518, provides for wiretap orders requiring third parties to assist law enforcement where they "can arrange access to facilities or technical assistance necessary to intercept communications." *Id*. at 1142. Nonetheless, the court concluded that Title III did not authorize an order allowing the FBI to force a company to wiretap conversations taking place in a car by using the microphone installed in the car as part of the company's on-board communications system. *Id*. at 1146. In finding such

assistance impermissible, the court noted that "[t]he obligation of private citizens to assist law enforcement, even if they are compensated for the immediate costs of doing so, has not extended to circumstances in which there is a complete disruption of a service they offer to a customer as part of their business, and, as we read title III, Congress did not intend that it would." *Id.* at 1145. Because the result of compelling assistance to the FBI would have been such that "the Company could no longer supply any of the various services it had promised its customer, including assurance of response in an emergency," the court held that Congress could not have intended for such assistance to be required by Title III. *Id*. at 1146.[11]

The same logic applies here. The governmental compulsion in this case would fundamentally alter Apple's ability to market a secure device to its customers.[12]

For these reasons, the order the government seeks here violates the Fifth Amendment. It would constitute a dramatic and unwarranted expansion of the government's investigative authority, by permitting it to conscript into government service those who have done nothing wrong and who do not possess or control information to which the government is entitled.

---

[11] The Ninth Circuit noted that the district court in the case had found that such an order would violate both the Takings Clause and the Due Process Clause, but the company withdrew its constitutional challenges on appeal. *See The Company*, 349 F.3d at 1135 n.6.

[12] As *amici* understand it, the two most recent versions of Apple's mobile operating system encrypt data in a more secure way than previous versions, such that Apple is unable to extract the data from users' devices, even if the company wishes to do so. Only a small and diminishing percentage of devices in use run a version of the operating system that Apple has the capability to unlock and extract data from. Although Apple previously maintained the ability to unlock certain devices for law enforcement agencies, it is free to choose to no longer maintain that technical ability or to discontinue offering it to law enforcement. In other words, just because a device manufacturer *could* unlock and decrypt the data on a device, and has done so in the past voluntarily, does not create an ongoing obligation for the company to continue to offer that service to the government in the future.

## CONCLUSION

For these reasons, the Court should deny the government's request. *Amici* respectfully request the opportunity to participate in any oral argument held.

Date: October 19, 2015                       Respectfully Submitted,

/s/ *Esha Bhandari*

| | |
|---|---|
| Arthur Eisenberg | Esha Bhandari** |
| Mariko Hirose | Alex Abdo |
| New York Civil Liberties Union | American Civil Liberties Union |
| 125 Broad Street, 19th Floor |   Foundation |
| New York, NY 10004 | 125 Broad Street, 18th Floor |
| Tel: 212-607-3300 | New York, NY 10004 |
| aeisenberg@nyclu.org | Tel: 212-549-2500 |
| | ebhandari@aclu.org |
| | |
| Jennifer Stisa Granick (CA Bar #168423) | Andrew Crocker |
| Director of Civil Liberties* | Nathan D. Cardozo |
| Riana Pfefferkorn (CA Bar #266817) | Electronic Frontier |
| Cryptography Policy Fellow* |   Foundation |
| Stanford Law School | 815 Eddy Street |
| Center for Internet and Society | San Francisco, CA 94109 |
| 559 Nathan Abbott Way | Tel: 415-436-9333 |
| Stanford, CA 94305 | andrew@eff.org |
| Tel: 650-736-8675 | |
| jennifer@law.stanford.edu | |
| * For affiliation purposes only | |

**Counsel for *amicus curiae* the American Civil Liberties Union wish to thank Eliza Sweren-Becker and Christopher Soghoian for their assistance in preparing this brief.

18