**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| |
|---|
| IN RE ORDER REQUIRING APPLE, INC. TO ASSIST IN THE EXECUTION OF A SEARCH WARRANT ISSUED BY THIS COURT |

No. 15 MISC 1902 (JO)

**APPLE INC.'S SUPPLEMENTAL RESPONSE TO**
**COURT'S OCTOBER 9, 2015 ORDER AND OPINION**

## INTRODUCTION AND SUMMARY

In its October 9, 2015 Memorandum & Order ("Order"), the Court raised concerns about the government's application to compel Apple to take possession of an Apple device the government obtained from a suspect during the investigation of alleged criminal activity so that Apple could bypass the security mechanisms on that device and extract data from it for the government.  The Court raised two categorical questions: (1) Does the All Writs Act, 28 U.S.C. § 1651(a), authorize the relief the government seeks? (2) Is the assistance sought from Apple technically feasible and not unduly burdensome?  On October 19, 2015, Apple provided its views regarding technical feasibility and burden.[1]  The Court has now asked Apple to address the other question posed in its Order—whether the All Writs Act can properly compel Apple to render the services the government requests.

Apple agrees with the Court's preliminary conclusion that the All Writs Act should not be read to permit the relief the government requests.  This case is not an instance where "the government seeks to fill in a statutory gap that Congress has failed to consider," but rather one where the government "seeks to have the court give it authority that Congress chose not to confer."  Order at 2.  The All Writs Act should not be used here, especially where the bounds of mandatory law enforcement assistance have already been drawn by the Communications Assistance for Law Enforcement Act ("CALEA").  Moreover, even if there were a statutory gap that the All Writs Act could properly fill, it would not justify the requested relief because the All Writs Act cannot extend as far as to compel a private company like Apple to be conscripted as an agent of the government into performing forensic services on a device in the government's

---

[1] That response did not, as the government mistakenly suggests, argue that the request was excessively burdensome in terms of financial expense, but it did truthfully explain the type of burdens imposed by the order.

possession for the benefit of its case against an individual citizen. The situation would be no different than if the government sought to use the All Writs Act to force a safe manufacturer to travel around the country unlocking safes that the government wants to access, or to make a lock manufacturer pick locks for the government.

The Court's Order identifies several additional ways this case is distinguishable from cases where courts have found that the All Writs Act can compel a party to assist the government with its law enforcement efforts.  For example, Apple is not a public utility.  Apple does not routinely perform the type of extraction the government is requesting for its own purposes or for commercial purposes. There are other alternative data sources potentially available to the government that do not appear to have been explored.  And the assistance the government seeks is not consistent with—and, in fact, is inconsistent with—Congressional enactments.  These facts render use of the All Writs Act inappropriate.

Apple does not dispute that it has, in prior instances, complied with data extraction demands that have been contained in the body of search warrants or, less often, All Writs Act orders.  These orders and warrants were obtained through an *ex parte* process into which Apple had no visibility.  In order to better protect its customers, Apple has offered language for law enforcement to use in search warrants, but has never taken any position on whether All Writs Act orders in aid of search warrants are legally appropriate, because it has never been a party to such proceeding. Where it received orders, Apple examined the orders for technical feasibility and burden, but as a non-participant in an *ex parte* process, Apple did not challenge the underlying authority of the court to issue the orders, nor has it challenged the determination of probable cause contained in the warrants.  The present situation is very different.  There is no outstanding

3

order and the Court has raised *sua sponte* the question of its authority to issue such an order

pursuant to the All Writs Act and has specifically asked Apple to provide its view to the Court.

The fact that courts had ordered Apple to comply with data extraction requests before this

Court questioned the practice is not a basis upon which to continue to compel Apple if the legal

authority is absent.  There have been other circumstances where third-parties were ordered in *ex*

*parte* proceedings to disclose information on a legal ground that was later determined to be

insufficient when analyzed, such as the compelled disclosure of contents of communications

prior to the decision in *United States v. Warshak*, 631 F.3d 266 (6th Cir. 2010).  Interpretations

of the law evolve and change over time, especially when courts engage in independent analysis

as this Court is doing here.  Apple's acquiescence to previously-issued judicial orders is not the

same as consenting to that process, and does not preclude Apple from taking a position in

response to the Court's inquiry.  *See Bumper v. N. Carolina*, 391 U.S. 543, 549 (1968).

## ARGUMENT

### A.    All Writs Act Authority Does Not Apply to Matters Covered by CALEA, or Specifically Omitted

The All Writs Act does not apply where Congress has spoken or elected not to speak on

an issue.  The All Writs Act provides that the "Supreme Court and all courts established by Act

of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions

and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).  In *United States v.*

*New York Telephone Co.*, 434 U.S. 159 (1977), the Supreme Court explained that "[t]he power

conferred by the Act extends, under appropriate circumstances, to persons who, though not

parties to the original action or engaged in wrongdoing, are in a position to frustrate the

implementation of a court order or the proper administration of justice, . . . and encompasses

even those who have not taken any affirmative action to hinder justice." *Id.* at 174.  The All

Writs Act, however, is not a catchall that authorizes courts to issue orders that are not permitted, or prohibited, by other statutes.  Rather, as the Court noted "[w]here a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling."  Order at 1 (*quoting Pennsylvania Bureau of Correction v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985)). That is, "[a]lthough the [All Writs] Act empowers federal courts to fashion extraordinary remedies when the need arises, it does not authorize them to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate." *Id.*

Here, there are statutory procedures regulating the categories of private companies that must assist law enforcement in executing authorized electronic surveillance and the nature of the assistance such companies must provide.  Those procedures are set forth by CALEA.  *See* 47 U.S.C. §§ 1001-1010.  As the government points out in its Reply, CALEA does not compel providers like Apple to assist law enforcement with respect to data stored on a device.  *See* Government's Oct. 22, 2015 Reply ("Reply"), ECF No. 15, at 22.   But this is not by inadvertence.   As Representative King's article referenced by the Court notes, when the government has considered changing the status quo, in ways that might require companies like Apple to provide this kind of assistance to law enforcement, it has been in the context of an amendment to CALEA.  *See* Order at 2. ("*CALEA is not viewed as applying to data contained on smart phones, and there has been a great deal of debate about whether it should be expanded to cover this content*.")  But Congress has not so expanded CALEA.

In addition to Representative King's commentary, the Order points to additional government statements confirming that this is not an instance where "the government seeks to fill in a statutory gap that Congress has failed to consider," but rather one where the government "seeks to have the Court give it authority Congress chose not to confer." Order at 2.  Apple will

not repeat those statements here. But it seems clear that the government has decided not to pursue a legislative option. *See* Testimony before the Senate Committee on Homeland Security and Governmental Affairs, Oct. 8, 2015, https://www.fbi.gov/news/testimony/threats-to-the-homeland (last accessed Oct. 23, 2015).[2]

In its Reply, the government argues that "there are many possible explanations for Congressional inaction on encryption, including that Congress is satisfied with existing authorities, or that Congress has not yet reached agreement on whether or how much to expand existing authorities." Reply at 24. That is exactly the point. This is a matter for Congress to decide. And whatever its reasons, Congress has affirmatively decided not to enact legislation requiring Apple to perform the types of services the government demands here. The All Writs Act should not be used to circumvent that decision. And while the government-cited maxim that "Congressional inaction lacks persuasive significance," Reply at 24, may be applicable in some situations, it is not applicable in an All Writs Act analysis where a threshold question is whether "the government seeks to fill in a statutory gap that Congress has failed to consider" or "seeks to have the court give it authority that Congress chose not to confer." Order at 2.

In analogous cases courts have concluded that the All Writs Act is not a sweeping catchall authority. In *In re Application of U.S. for an Order Authorizing Disclosure of Location Information of a Specified Wireless Telephone*, 849 F. Supp. 2d 526 (D. Md. 2011), the District of Maryland declined to use the All Writs Act to order a wireless provider to prospectively provide the location data of an alleged criminal to execute an arrest warrant. The Court observed that the All Writs Act "cannot be used to circumvent the safeguards set in place by existing law

---

[2] *See also* Nicole Perlroth & David E. Sanger, *Obama Won't Seek Access to Encrypted User Data*, N.Y. Times (Oct. 10, 2015), https://www.nytimes.com/2015/10/11/us/politics/obama-wont-seek-access-to-encrypted-user-data.html (last accessed October 23, 2015).

anywhere those safeguards prevent the requesting party's result." *Id.* at 580. Rather, the All

Writs Act may authorize "a search in furtherance of a prior order only where no other law

applies, no Fourth Amendment right to privacy is implicated, and exceptional circumstances are

present." *Id.* at 582. The court then concluded that the government failed to establish such

prerequisites:

> Here, in the absence of extraordinary circumstances, where statutory law properly governs the government's request and unlike *N.Y. Telephone Company*, Congress most certainly has not endorsed acquisition of location data for this purpose, the Court will not allow the government to ignore the restrictions of the Fourth Amendment and circumvent the protections established by statute by invoking the All Writs Act. Therefore, the government's application under the All Writs Act is unavailing.

*Id.* at 583. The same can be said here.

Likewise, in *In re Application of the U.S. for an Order (1) Authorizing the Use of a Pen

Register & a Trap & Trace Device,* 396 F. Supp. 2d 294 (E.D.N.Y. 2005), this Court declined to

issue an All Writs Act order requiring a wireless service provider to prospectively monitor and

disclose to the government the location of a suspect's cell phone based on GPS tracking using

cell towers. Although that decision was based primarily on lack of probable cause, the Court

also expressed concern that the government sought to use the All Writs Act in an unprecedented

way. *Id.* at 326. Specifically, the Court rejected the notion "that the All Writs Act serves . . . as

a mechanism for the judiciary to give [the government] the investigative tools that Congress has

not." *Id.* at 325. It thus declined "to read into the All Writs Act an empowerment of the

judiciary to grant the executive branch authority to use investigative techniques either explicitly

denied it by the legislative branch, or at a minimum omitted from a far-reaching and detailed

statutory scheme that has received the legislature's intensive and repeated consideration." *Id.* at

326. In doing so, it cautioned that "[s]uch a broad reading of the statute invites an exercise of

judicial activism that is breathtaking in its scope and fundamentally inconsistent with my understanding of the extent of my authority." *Id.*

As these cases make clear, and as the Court pointed out in its Order, the All Writs Act does not apply when another statutory scheme addresses the issue or Congress has consciously determined not to take action. That is the case here.

**B.      Even if the All Writs Act Applies, it Cannot Require Apple to Provide Expert Forensic Services on a Device it Does Not Own or Possess**

Even if the All Writs Act applies, it still cannot be used to accomplish the result that the government seeks. Apple does not possess or control the device. Rather, the government seeks to force Apple to take receipt of a device in the government's custody and provide what are essentially expert forensic services for the government by bypassing the security on that device to extract data belonging to the device's owner. This commandeering of Apple personnel and resources to do the government's investigative work is materially different from asking a communication service provider to access or provide data on its network or in its possession.

Prior cases have rejected use of the All Writs Act to compel the type of conscription the government requests here. In *Pennsylvania Bureau of Correction v. U.S. Marshals Service*, 474 U.S. 34 (1985), the United States Marshals Service challenged a district court order requiring them to take possession of prisoner-witnesses confined in state facilities and transfer them to a federal courthouse for trial. *Id.* at 34-36. After the Court of Appeals for the Third Circuit found that "the All Writs Act did not confer power upon the District Court to compel *non-custodians* to bear the expense of [the production of witnesses] simply because they have access to a deeper pocket," the case went to the Supreme Court. *Id.* at 36 (emphasis in original). The Supreme Court affirmed, finding that "[a]n examination of the language of the All Writs Act, its legislative history, and our decisions construing it convinces us . . . that the Act does not

authorize a district court to order the Marshals to transport state prisoners from state prisons to the federal courthouse in the ordinary course of litigation in federal courts." *Id.* at 40. The same reasoning applies here: the All Writs Act does not compel non-custodian Apple to take possession of a device in the government's custody and perform services on it in the ordinary course of a law enforcement investigation that Apple has no underlying connection to other than having initially manufactured the device.

The fact that the government seeks to force Apple to take receipt of a device already in the government's custody further distinguishes this situation from cases where the All Writs Act was used to compel companies to assist law enforcement. For example, in *New York Telephone Co.*, 434 U.S. at 159, the Supreme Court upheld an All Writs Act order requiring New York Telephone Company to lease to the FBI certain phone lines owned and operated by New York Telephone Company so the FBI could place pen registers on those lines. Likewise, in *Application of United States of America for an Order Authorizing an In-Progress Trace of Wire Communications over Telephone Facilities* (*Mountain Bell*), 616 F.2d 1122, 1123-4 (9th Cir. 1980), the Ninth Circuit affirmed an All Writs Act order compelling public utility Mountain Bell to install a telephone tracking device on a telephone line owned and operated by Mountain Bell. And in *United States v. Doe*, 537 F. Supp. 838, 839 (E.D.N.Y. 1982), the court used the All Writs Act to compel a telephone company to supply the United States Marshal's Service with subscriber telephone toll records in the telephone company's possession.

The situation here is markedly different. The government wants to force Apple to take receipt of a device it does not own or possess, and then perform services on that device for the government—services that could later require Apple to testify at trial under the Confrontation Clause of the Sixth Amendment. *See, e.g., U.S. v. Cameron*, 699 F.3d 621, 643-44 (1st Cir.

2012) (holding that because child pornography reports generated by Internet provider were testimonial, the reports "should not have been admitted without giving [defendant] the opportunity to cross-examine the [provider] employees who prepared the [reports]").[3]  This is notwithstanding that Apple is a third-party with no connection to either the underlying investigation or the data stored on the device.

The fact that Apple originally "designed, manufactured, and sold" the device in question is not a basis to force Apple to now perform expert forensic services on that device.  *See* Reply at 13.  If it were, every company could be conscripted into government service merely by offering a product or service to consumers.  The fact that Apple's devices include software, and that such software comes with licensing requirements, does not change anything.  *See* Reply at 13-15.  Apple's licensing agreement does not establish a connection between Apple and the private data its customers store on their devices.  It does not, for example, permit Apple to invade its customers' devices uninvited or prohibit those customers from re-selling their devices to someone else absent consent from Apple.  It merely places limitations on the customers' use and redistribution of Apple's software (limitations that are common to the industry).  To hold that the existence of such a license is enough to conscript Apple into government service would be to say that the manufacturer of a car that has licensed software in it (which is increasingly the case) could be required to provide law enforcement with access to the vehicle or to alter its functionality at the government's request.

---

[3] In its Reply, the government suggests that because *New York Telephone Co.* did not consider the burden associated with testimonial requirements such requirements should be irrelevant to this Court's considerations.  Reply at 17.  But *New York Telephone Co.*, was decided in 1977, decades before cases like *Cameron* and *Crawford v. Washington*, 541 U.S. 36 (2004), which made clear that in this type of situation Apple personnel would be required to testify at any subsequent criminal trial.  And indeed, in Apple's experience, federal and state prosecutors have frequently requested that Apple personnel testify at criminal trials.

Equally unavailing is the argument that Apple should be subject to government conscription because it is an American company, and owns patents and therefore benefits from the American legal system. *See* Reply at 19.   If that were enough to invoke the All Writs Act, every company—indeed every citizen—would be subject to All Writs Act orders.  Of course, Apple takes its obligations as a corporate citizen very seriously, which is why it routinely provides assistance to law enforcement where there is a proper legal basis for it to do so.  But the notion that operating or living in the United States subjects every company or person to government conscription is a bridge too far.

Courts have refused to allow the type of conscription sought here in contexts far less intrusive.  For example, Federal Rule of Civil Procedure 45 allows parties to "command each person to whom [a subpoena] is directed to . . . produce designated documents . . . in that person's possession, custody or control; or permit the inspection of premises . . ."  Fed. R. Civ. P. 45(a)(1)(A)(iii).  Courts interpreting Rule 45 have routinely held that "the power to subpoena documents from non-parties during discovery is limited to records that already exist and are within the non-party's possession. *Crawford v. Biolife Plasma Servs. LP*, No. 2:10 CV 24, 2011 WL 2183874, at *4 (N.D. Ind. June 3, 2011). Even with respect to parties to a litigation (as opposed to a non-party like Apple), courts have refused to compel an affirmative action similar to what the government requests.  Courts have refused to order a party to conduct tests or research requested by another party in discovery. *See, e.g., Sperberg v. Firestone Tire & Rubber Co.*, 61 F.R.D. 80, 83 (N.D. Ohio 1973) (while "each party is free to prepare and perform tests in the manner he deems best . . . he cannot compel another party to perform the same tests"); *In re Air Crash Disaster at Sioux City, Iowa, on July 19, 1989*, No. 89 C 8082, 1991 WL 147365, at *2 (N.D. Ill. July 26, 1991) ("Rule 34 does not require a party to conduct tests . . ."); *Sladen v.*

*Girltown, Inc.*, 425 F.2d 24, 25 (7th Cir.1979) (reversing district court order requiring plaintiffs to conduct tests).

The government's proffered reading of the All Writs Act, if carried to its logical conclusion, leads to disquieting results. For example, if the government wanted to crack a safe, it could require the safe's manufacturer to take possession of, or even travel to the location of, that safe and open it. If the government wanted to examine a car, it could send the car to the manufacturer and require the manufacturer to perform the examination. The government could seemingly co-opt any private company it wanted to provide services in support of law enforcement activity, as long as the underlying activity was authorized by a warrant. The All Writs Act does not confer such limitless authority.[4]

### C.    This Case is Unlike Other Cases Upholding Use of the All Writs Act

As the Court noted in its Order, this case differs in additional ways from other cases allowing use of the All Writs Act to compel private companies to assist law enforcement. *See* Order at 7-8.

***First***, Apple is not "a highly regulated public utility with a duty to serve the public" like the phone companies in *New York. Telephone Co.* and *Mountain Bell*. *See New York. Tel. Co.*, 430 U.S. at 160. In *Mountain Bell*, in concluding that telephone tracing assistance was required under the All Writs Act, the Ninth Circuit found that the result depended not only upon the sui generis character of such surveillance, but also upon the highly regulated, public nature of Mountain Bell. *See Mountain Bell*, 616 F.2d at 1131 ("It is to be emphasized that a telephone

---

[4] In its Reply, the government notes that it may need to get a translator to translate any evidence recovered from the device. *See* Reply at 4, n.3. Under the government's reasoning, it could likewise compel a translator to provide translation services for the government. Such conscription would be inappropriate regardless of how rare a language was, or how few willing translators were available.

company is no ordinary third party.  It is a public utility, enjoying a monopoly in an essential

area of communications.")   Here, Apple is a private company.   And although it dedicates

significant resources to assisting law enforcement where appropriate, it should not be forced to

do so at the expense of its customers' privacy and security or its own business absent a proper

legal basis.

*Second*, Apple does not regularly circumvent device passcodes for its own use or for

commercial purposes. In *Application of United States of America for Order Authorizing*

*Installation of Pen Register or Touch-Tone Decoder & Terminating Trap* (*Pennsylvania Bell*),

610 F.2d 1148 (3d Cir. 1979), the telephone companies receiving the orders admitted that they

conducted traces themselves if a customer regularly received annoying calls and less burdensome

measures failed to stop the calls or to locate defects on a particular line. *Id.* at 1153.  Likewise,

in *United States v. Hall*, 583 F. Supp. 717 (E.D. Va. 1984), the court approved an order

compelling Citibank to produce credit card records of a fugitive's girlfriend because credit card

companies "routinely, indeed monthly, compile a list of all the purchases and the amounts of

those purchases, the so-called cash advances, and the amount of those advances, and present

them to their customers for payment."  *Id.* at 721.  That is not the case here, where Apple does

not extract data from locked phones as part of its own business or as a service for third parties.

*Third*, unlike in *New York Telephone Co.* where there was no other method available to

secure the information that the court determined should be provided to the government, here

there are potential alternatives available to the government.  *See* Order at 7.  This includes

"compel[ling] the device's owner or user to unlock the phone for lawful inspection, on pain of

coercive contempt sanctions."  *Id.*  It also includes potentially seeking other customer records or

data available through a subpoena or 2703(d) order that would not require Apple to take receipt

of the  device and perform expert forensic services for the government.  The government's

application and Reply also do not allege, or make any showing, that forensic companies cannot

accomplish the type of extraction they seek here.

In its Reply, the government asserts that it asked the defendant for the passcode and he

(through counsel) claimed not to remember it.  *See* Reply at 20.  But asking if a defendant

remembers the passcode is different than obtaining an order requiring a defendant to unlock the

phone under pain of sanctions.[5] The government also suggests that no alternatives are available

because the target device has a remote wipe request pending.  *See* Reply at 8.  But Apple has

already informed the government that this remote wipe request will not work anymore.  Under

these circumstances, invocation of the All Writs Act is inappropriate.  *See In re Application of*

*U.S. for an Order Authorizing Disclosure of Location Info. of a Specified Wireless Tel.*, 849 F.

Supp. 2d 526, 581 (D. Md. 2011) (noting that "[o]ther less intrusive means, a showing that other

means had been attempted and were unsuccessful, and the likelihood of success . . . are all

factors to consider" when analyzing whether "exceptional circumstances" exist justifying

invocation of the All Writs Act).

*Fourth*, requiring Apple to provide the assistance the government seeks is not consistent

with recent Congressional enactments.  *See* Order at 8.  Rather, as the Court observed "Congress

has done nothing that would remotely suggest an intent to force Apple, in the circumstances of

this case, to provide the assistance the government now requests."  *Id.*

---

[5] The government argues that forcing the defendant to unlock his phone would present obstacles
based on current law.  But forcing Apple to perform services for the government also presents
obstacles based on current law.

**CONCLUSION**

Apple's previous submission addressed the feasibility of the government's request and the burden Apple could face if forced to comply with that request.  It bears repeating that for Apple, maintaining the trust of our customers is of critical importance.  Apple cares deeply about our customers' privacy and security, and will seek to protect their data, to the extent it can, from improper access or disclosure.  Absent clear legal authority, Apple should not be compelled to act as the government's 'forensic agent' to disable security measures Apple built for the benefit of its customers.  Should this Court conclude that the All Writs Act does not provide such clear authority, then the Court should err on the side of caution and deny the government's request.

Dated:  October 23, 2015                    Respectfully submitted,

                                            /s/ Ken Dreifach
                                            Ken Dreifach (Bar No. KD4816)
                                            ZwillGen PLLC
                                            232 Madison Avenue
                                            New York, NY 10016
                                            (646) 362-5590

                                            Marc Zwillinger (*pro hac vice*)
                                            Jeffrey Landis (*pro hac vice*)
                                            ZwillGen PLLC
                                            1900 M Street, NW, Suite 250
                                            Washington, DC 20036
                                            (202) 296-3585

                                            *Counsel for Apple Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2015, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, the Eastern District's Local Rules, and the Eastern District's Rules on Electronic Service upon the following parties and participants:


Lauren Howard Elbert
Assistant United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201
(718) 254-7577


/s/ Jeffrey Landis
Jeffrey Landis (*pro hac vice*)
ZwillGen PLLC
1900 M Street, NW, Suite 250
Washington, DC 20036
(202) 296-3585