

1900 M Street, NW, Ste. 250, Washington, D.C. 20036
marc@zwillgen.com

Marc J. Zwillinger
(202) 706-5202 (phone)
(202) 706-5298 (fax)

October 28, 2015

VIA ELECTRONIC FILING
The Honorable James Orenstein
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re:    *In re Order Requiring Apple Inc. to Assist in the Execution of a Search Warrant Issued by the Court*, No. 15-MC-1902

Dear Judge Orenstein:

We write pursuant to the Court's Civil Conference Minute Order requesting that the parties submit supplemental briefs to address several issues that were raised during the October 26, 2015 hearing ("Hearing") in this matter. This letter addresses three issues: 1) the extent to which Apple is an information services provider under CALEA; 2) the import of the *Djibo* materials the Court distributed at the Hearing; and 3) the significance of certain additional cases discussed at the Hearing.

**Is Apple an Information Services Provider Under CALEA?**

The Court asked whether Apple is an "information services provider" as that term is used in the Communications Assistance for Law Enforcement Act ("CALEA"). Apple is substantially engaged in the provision of "information services" as that term is defined under CALEA, and thus could be considered an information services provider. *See* 47 U.S.C. § 1001(6).

CALEA's requirements apply to "telecommunications carriers," which are entities "engaged in the transmission or switching of wire or electronic communications as a common carrier for hire." 47 U.S.C. § 1001(8)(A). An entity that provides information services is expressly excluded from the definition of telecommunications carrier. *Id*. § 1001(8)(C)(i). Under CALEA "information services" means the "offering of a capability for generating, acquiring, storing, transforming, processing, retrieving, utilizing, or making available information via telecommunications," and "includes a service that permits a customer to retrieve stored information

from, or file information for storage in, information storage facilities; electronic publishing; and electronic messaging services." *Id.* § 1001(6).

Apple is substantially engaged in developing and offering products that provide such capabilities. For example, Apple's iTunes service allows customers to purchase, store, and access music, movies, television shows, games and apps via an Internet-connected Apple device, such as an iPhone or iPad. iTunes thus constitutes an "information service" under CALEA by providing "a capability for . . . acquiring, storing . . . [and] retrieving . . . information via telecommunications." *Id.* Similarly, iMessage allows Apple customers (connected over the Internet) to communicate by messages sent and received via their iPhone, iPad, Mac, and iPod touch devices, and iCloud enables Apple's customers to store photos, calendars, contacts and other information in the cloud so that they can be accessed by any of the customers' devices.

Congress intended CALEA to cover telecommunications carriers, but exempt information service providers, "because the *functions* [they] provide[]" are "information services." *In the Matter of Commc'ns Assistance for Law Enforcement Broadband Access and Servs.*, 19 F.C.C. Rcd. 15676, 15706 (2004). Here, Apple provides substantial information services. Of course, some of the services Apple provides do not fall under CALEA's definition of "information services." For example, Apple's role as manufacturer of the iPhone or iPad would not fall within the definition of "information services." But nor do those services invoke CALEA's requirements. And given that a significant portion of Apple's offerings are information services, Apple can be considered an information services provider.

### *United States v. Djibo* **Materials**

At the Hearing, the Court distributed a letter and a transcript of a Special Agent's testimony from the matter *United* States *v. Djibo*, No. 15-CR-00088-SJ (E.D.N.Y. March 5, 2015), a criminal case pending in the Eastern District. The Court observed that in the *Djibo* case, the government claimed to be in possession of technology that would allow its forensic technicians to override the passcode security feature on an iPhone. *See* Transcript of Argument ("Oct. 26, 2015 Tr.") at 3:22-4:3, ECF No. 19. Apple is not privy to the facts and circumstances of that case and cannot comment on the veracity of the government's claims. But in the transcript the Court distributed, the device the Special Agent testified that he bypassed was an iPhone running a version of iOS 7, the same operating system at issue here. The Special Agent further testified that he never bypassed a device running iOS 8 or higher.[1]

The government's testimony in *Djibo* further demonstrates that the circumstances here are unlike *New York Telephone* where there was no other method available to secure the information that the court determined should be provided to the government. *See* October 9, 2015 Memorandum & Order ("Order") at 7, ECF No. 3. Moreover, it is irrelevant that the technician in the *Djibo* case

---

[1] Although it appears that the defendant in *Djibo* had an iPhone running iOS 8.1.2, no security feature on that phone was ever bypassed. Rather, when the phone was presented to the Special Agent it was either already unlocked or was presented with the passcode. As Apple stated at the Hearing, Apple is not aware of any mechanism that can successfully bypass the security on a locked device running iOS 8 or 9 or any instance where such a bypass was ever successfully accomplished. *See* Oct. 26, 2015 Tr. at 62:25-63:6.

was from Homeland Security Investigations, and not the DEA or FBI, which are the agencies handling the investigation in the underlying criminal case here. The government asserts in its reply in this case that "absent Apple's assistance," the government cannot access evidence on the device. *See* The Government's Reply at 3, ECF No. 15. But the fact that Homeland Security Investigations is a government agency and the *Djibo* case is being handled by the same United States Attorney's office as the underlying criminal case here, suggests that the government's assertion that it cannot access evidence on the device "absent Apple's assistance" warrants further consideration. *Id.*

**Cases Raised at Hearing**

During the Hearing, several cases were raised either by the Court or the government. Each of these cases further supports Apple's position that it cannot be conscripted into providing expert forensic services for the government. None suggests that invocation of the All Writs Act is appropriate here.

- In *Application of the United States for Relief*, 427 F.2d 639 (9th Cir. 1970), the court denied the government's request for an order requiring a telephone company to assist the government in implementing a Title III interception by leasing lines to the government and connecting wires and bridges. *Id.* at 644, n.1. The court observed that when Congress enacted Title III it was aware of the problems involved in implementing wiretaps but "omitted any reference to judicial power to require communications carriers to assist." *Id.* at 644. The court held that it could not find "any district court authority, statutory or inherent" for requiring such assistance outside of Title III. *Id.* This contradicts the government's position that the All Writs Act can be used in any situation where Congress has not expressly prohibited an activity by statute. If the government's theory were correct, the All Writs Act would have properly been invoked because Title III did not include a provision expressly prohibiting the government from requiring telephone companies to provide assistance.

- Similarly, in *Pennsylvania Bureau of Correction v. U.S. Marshals Service*, 474 U.S. 34 (1985), the Supreme Court concluded that the All Writs Act could not be used to require the U.S. Marshals Service to transport prisoners from state prisons to federal courthouses. *Id.* at 35-36. At the Hearing, the government sought to distinguish the case on the grounds that there was a habeas statute saying that state court personnel were required to perform the transfer. Oct. 26, 2015 Tr. at 70:25-71:5. But under the government's view, the situation would still be deemed "congressional silence," thus allowing the All Writs Act to be invoked because the statute did not expressly prohibit federal personnel from performing transfers. *See Pennsylvania Bureau of Correction*, 474 U.S. at 39 ("The language of the statute thus expressly commands the custodian to bring his prisoner to the court, but extends this duty to no other.")

- *Board of Education of Independent School District 89, Oklahoma County v. York*, 429 F.2d 66 (10th Cir. 1970) also does not support the notion that a non-party can be conscripted into providing services for the government. In that case, which related to efforts to desegregate schools in Oklahoma, a district court issued an order approving a school board plan changing the attendance area for a certain school to include the residence of the appellants. *Id.* at 68. Notwithstanding that order, the appellants continued to send their son to his old

school. *Id*. The district court entered a preliminary injunction requiring appellants to comply with the re-districting order. On appeal, the appellants challenged the validity of the district court order approving the boundary changes and the subsequent injunction. The Court found that the district court had jurisdiction over the boundary changes under 28 U.S.C. § 1331 and, citing the All Writs Act, that the injunction was "'necessary and appropriate' in the aid of the court's jurisdiction over the underlying segregation problems." *Id.* at 69. In addition to the obvious difference that *York* involved the unique challenges of school desegregation, *York* differs from this case because the appellants were not third-parties otherwise disconnected from the underlying dispute. Appellants were subject to the original order re-drawing the school boundaries. It was only after they intentionally violated that order that the court entered a preliminary injunction prohibiting them from attending their previous school.

- Finally, *Babington v. Yellow Taxi Corp.*, 250 N.E. 726 (1928), also undermines the notion that the All Writs Act alone can be used to conscript a third-party into government service. In that case, the New York Court of Appeals evaluated whether a driver who died while chasing another car at the direction of a police officer was acting within the scope of his employment. *Id*. As part of its analysis, the court observed that the employer could have reasonably expected its employee to be required to assist law enforcement. But that conclusion was based on a statute expressly requiring individuals commanded to aid an officer in arresting a person to do so or be subject to criminal punishment. *Id.* at 727. Here, by contrast, there is no such statute, or at least no such statute that would compel Apple in this situation.

In sum, the government's position that the All Writs Act can be used whenever a statute does not expressly prohibit an action is untenable. It runs counter to both the text of the All Writs Act itself and the cases interpreting it. Indeed, it is well settled that "[w]here a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." Order at 1 (*quoting Pennsylvania Bureau of Correction*, 474 U.S. at 43). That is exactly the case here, where the bounds of mandatory law enforcement assistance were drawn by CALEA, and drawn in such a way to exclude the relief the government seeks. Even if the All Writs Act did apply, none of the cases the government relies upon stand for the proposition that it can be used to force a company to take possession of a device outside of its possession or control and perform services on that device, particularly where the company does not perform such services as part of its business and there may be alternative means of obtaining the requested information available to the government. For these reasons, the Court should deny the government's request.

Sincerely,

/s/ Marc J. Zwillinger

Marc J. Zwillinger

cc: All Counsel of Record (via ECF)